IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRONIMO HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-cv-5731 |
| ) | |
| FOREST PRESERVE DISTRICT OF ) | Judge Robert M. Dow, Jr. |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gronimo Hernandez filed this civil rights action against the Forest Preserve District of Cook County ("District") on October 7, 2008, alleging national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Before the Court is the District's second motion for summary judgment [71], along with three motions to strike [82, 84, 86] filed by Defendant. For the reasons stated below, the Court denies the District's three motions to strike [82, 84, 86] and grants the District's second motion for summary judgment [71].

**I. Background**

**A. Motions to Strike**

Before the Court are three motions to strike filed by Defendant. These three motions were filed after the Court previously denied a motion to strike filed by Defendant in conjunction with its first motion for summary judgment. The Court's ruling on the previously filed motion to strike was as follows:

> Defendant asks the Court to strike Plaintiff's additional fact number 6 on the ground that Plaintiff lacks personal knowledge of the matter asserted. On its web page (see http://www.ilnd.uscourts.gov/home/JudgeInfo.aspx), this Court has

included among its Case Management Procedures a link for Summary Judgment Local Rule 56.1 Submissions. That link contains the following statement: Motions to strike all or portions of an opposing party's Local Rule 56.1 submission are disfavored. Under ordinary circumstances, if a party contends that its opponent has included inadmissible evidence, improper argument, or other objectionable material in a Rule 56.1 submission, the party's argument that the offending material should not be considered should be included in its response or reply brief, not in a separate motion to strike. Local Rule 56.1(a) provides the means for implementing the Court's preferred practice: [i]f additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response. Local Rule 56.1 also requires that assertions advanced as proposed statements of material fact be supported by admissible record evidence, and where such evidence is lacking, the Court is within its discretion to disregard the statement. See, *e.g.*, *Malec v. Sanford*, 191 F.R.D. 581, 583−85 (N.D. Ill. 2000). Consistent with these procedures, Defendant's motion to strike [51] is respectfully denied; however, the Court may disregard any assertions of fact that lack proper evidentiary support.

As with the prior motion to strike, the current motions to strike challenge three affidavits submitted by Plaintiff based on the requirement that affidavits "be made on personal knowledge, setting forth such facts as would be admissible in evidence, and showing affirmatively that the affiant is competent to testify to the matters stated therein." *Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998); see also *Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998) (testimony "that was necessarily speculative and lacking in foundation * * * is insufficient."); Fed. R. Civ. P. 56(e).

To the extent that Defendant believes that the Court's approach to motions to strike has changed over the course of the year between summary judgment motions, it has not. The Court is capable of disregarding unfounded assertions of fact found in Plaintiff's statement. Any statements or responses that contain legal conclusions or argument, are evasive, contain hearsay or are not based on personal knowledge, are irrelevant, or are not supported by evidence in the record will not be considered by the Court in ruling on Defendant's motion for summary judgment. Consistent with its obligations under the federal and local rules, the Court will rely

only on material statements of fact which are both admissible and supported by the record compiled at the summary judgment stage. See Fed. R. Civ. P. 56(e); L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F. Supp. 2d 834, 836 (N.D. Ill. 2007); *Lawrence v. Bd. of Election Com'rs of City of Chicago*, 524 F. Supp. 2d 1011, 1014 (N.D. Ill. 2007). As far as the District's attacks on the credibility of the three affiants (Gronimo Hernandez, Joseph Hruska, and Dwaine Hicks), those matters would be for a jury, not the Court, to resolve. Defendant's three motions to strike are denied.

### B. Facts

In September 2006, the District hired Gronimo Hernandez, who is Puerto Rican, as a maintenance mechanic. He was assigned to the Central Garage under the supervision of Thomas Thompson. As a maintenance mechanic, Hernandez's primary duty was to repair the District's trucks. As of September 1, 2006, the District had four maintenance mechanics: Hernandez, Dwaine Hicks (African American), David Benevidez (Hispanic American), and Ted Adams (African American). Hicks was hired on the same day as Hernandez, while Benevidez and Adams had been hired years before. With the exception of David Benevidez, who was assigned to repair police vehicles, all mechanics worked on all of the trucks without regard to the trucks' age. All of the jobs that Thompson assigned to Hernandez were jobs that were properly assigned to a mechanic and that fell within Hernandez's job description.

On February 1, 2007, Hernandez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the District discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964.[1] On October 7,

---

[1] Eight days later, on February 9, 2007, Hernandez filed a Chapter 13 bankruptcy petition in the Bankruptcy Court for the Northern District of Illinois. Hernandez did not list his claims against the District on his bankruptcy petition. On August 18, 2009, the District filed its first summary judgment motion on the ground that Hernandez was not the real party in interest due to his having filed a

3

2008, after obtaining a Notice of Right to Sue from the EEOC, Hernandez filed this action. In his complaint, Hernandez claims that the District harassed him in the terms and conditions of his employment by refusing to allow him to leave work to go for medical treatment after he cut himself at work, orally reprimanding him for speaking Spanish during working hours, and calling him derogatory names.

During his deposition, Hernandez testified that Thompson told him and a Mexican-American co-worker to stop speaking in Spanish to each other on October 24, 2006. He also testified that, during one conversation in November 2006, Thompson called him names such as "pig pen," "dirty," "stupid," "a junkyard mechanic," and a "Pollack."[2] He also maintains that he was required to work primarily on older vehicles in poor condition and that sometime in 2008 his work area was moved to in front of the main office to prevent him from talking with co-worker Hicks and so that he could be observed by his supervisor. Hernandez claims that he had to request that parts be ordered, whereas other co-workers were not subject to the same restrictions.

---

bankruptcy petition. On March 29, 2010, the Court denied the District's motion, allowing Hernandez to pursue this action on behalf of his creditors.

[2] During his deposition, Hernandez testified that all of these comments occurred in a single conversation with Thompson in November 2006. His complaint also reflects that the derogatory remarks were made during one conversation in November 2006. However, in response to Defendant's summary judgment motion, Hernandez disputes this fact by citing generally to his affidavit, created on March 3, 2011, nearly two years after his deposition in June 2009. To the extent that a party's statements in an affidavit contradict his deposition testimony, the Court will not consider the affidavit in ruling on the summary judgment motions. See *Buckner v. Sam's Club, Inc.,* 75 F.3d 290, 292 (7th Cir. 1996) ("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony"); see also *Patterson v. Chicago Ass'n for Retarded Citizens,* 150 F.3d 719, 720 (7th Cir. 1998). Hernandez's post-deposition statement (his affidavit), claiming that from September 2006 to the present Thompson has called him derogatory names despite his prior deposition testimony that the name-calling occurred only during one conversation (as well as the allegations in the complaint that the name-calling occurred only on one day), is precisely the type of self-serving affidavit that the case law cited above forbids. See *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) (finding that "[s]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment"). To the extent that Hernandez's affidavit conflicts with his deposition testimony, his deposition testimony will be accepted.

He testified that he was not allowed to go into office to "sit around" like other employees; rather, he could only go into the office to get his work orders. Finally, he maintains that on October 17, 2006, a district employee (not Thompson) did not allow him to go to the hospital after he cut his leg while working. After work on October 17, Hernandez did not go to the hospital; rather, he waited two months to go the hospital for his injury.

In support of his retaliation claim, Hernandez maintains that his supervisor, Thompson, asked Joseph Hruska, a maintenance foreman, to document any moves made by Hicks and Hernandez because they "needed to be fired" for filing charges of discrimination against Thompson. Hruska worked at the garage for approximately three months of the four and a half years that Plaintiff had been employed by the District, from May 29, 2008 until September 5, 2008.[3] Hernandez filed his charge of discrimination in February 2007, more than a year before Hruska started working. According to Hruska's affidavit, Thompson did not ask Hruska to document the activities of any other maintenance mechanics, but directed him to draft multiple disciplinary action forms against Hernandez.[4] Hernandez did not attach a single disciplinary action form signed by Hruska to his summary judgment materials, and he only refers to one specific form—from July 17, 2008—that he alleges Thompson asked Hruska to complete. Notably, the July 17, 2008 form is not signed by Thompson, but rather by James Wagner. Hernandez has not alleged any discrimination or retaliation against Wagner.

---

[3] As the District points out, Hruska's affidavit contains some sweeping statements that purport to be about Hernandez's job performance generally, even though Hruska was only employed by the District for roughly three months during Hernandez's time as a mechanic. The Court construes such claims by Hruska as confined to the period when he and Hernandez both worked at the Central Garage, prior to Hruska's termination.

[4] Disciplinary action forms are put in an employee's personnel file and remain there unless the District agrees to remove the form.

Hruska did not believe that the disciplinary forms that he filled out regarding Hernandez were "accurate or factual," as Hruska believed that Hernandez was meeting or exceeding the work place expectations for the three months they worked together. During his employment as foreman, Hruska did not believe any other mechanics ever received disciplinary write-ups. During this time, Hruska thought that Thompson often criticized Hernandez's work performance.

Hernandez' regular work schedule is from 7:00 a.m. to 3:30 p.m. One day, Hernandez came to work 5.5 hours late due to a doctor's appointment. Despite the garage's procedures, which require employees to contact their supervisor if they will be late to work, he did not attempt to contact his supervisor prior to the start of the work day. Hernandez was "docked" pay for the hours that he missed. During his deposition, he did not know of any other employee who came to work five hours late but was not docked.[5]

Hernandez admitted in his response to Defendant's statement of facts that all of his complaints of discrimination and retaliation are directed to one District employee, his supervisor Thomas Thompson. Furthermore, based on the record before the Court, Hernandez continues to be employed as a maintenance mechanic in the District's Central Garage. His salary has never been decreased, and he has never lost benefits. However, Hernandez alleges that he continues to receive approximately one disciplinary action form per month. In his summary judgment materials, Hernandez submitted six disciplinary actions forms ranging from January 2007 to July 2008 (approximately nineteen months), three of which were signed by Thomas Thompson, two of which were signed by Len Dufkis, and one that was signed by James Wagner.

---

[5] Once again, in spite of deposition testimony to the contrary, Hernandez cites generally to his affidavit and claims that this fact is disputed. However, he has not pointed to any specific evidence in the record, or in his affidavit, to refute the facts that he came to work late, failed to notify his supervisor prior to his shift, and is not aware of any other employees who were not docked pay for doing the same thing.

## II.     Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673,

681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id*. Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

**III.     Analysis**

Hernandez alleges that the District discriminated against him on the basis of his race or national origin by subjecting him to a hostile work environment and also retaliated against him for filing grievances against his supervisor. The District maintains that summary judgment is appropriate on his hostile work environment claim because Hernandez has not alleged harassment that is so subjectively and objectively severe or pervasive that it altered the conditions of his employment. Furthermore, the District maintains that summary judgment should be granted as to Hernandez's retaliation claim because he has failed to allege that he suffered an adverse employment action.

    **A.     Plaintiff's Hostile Work Environment Claim**

In order to establish a *prima facie* case of a hostile work environment based on national origin or race[6], a plaintiff must demonstrate that (1) he was subject to unwelcome harassment; (2) the harassment was based on his national origin or race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Luckie v. Ameritech Corp.*,

---

[6] Hernandez uses race and national origin interchangeably in his response brief. Hernandez's EEOC charge alleges discrimination based on national origin, but his complaint alleges discrimination based on race. See generally *Torres v. City of Chicago*, 2000 WL 549588, at *2 (N.D. Ill. May 1, 2000) (noting that the common use, or misuse, of the term "Hispanic" has blurred the line between race and national origin discrimination as it pertains to Hispanics). Whether Hernandez is pursuing a race or national origin discrimination claim (or both) does not affect the Court's analysis in this case.

8

389 F.3d 708, 713 (7th Cir. 2004); see also *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009). To satisfy his burden, a plaintiff must present evidence showing "a workplace permeated with discriminatory ridicule, intimidation, and insult." *Id.* at 714. Normally, such allegations of harassment are supported by facts that the Plaintiff is the target of racial slurs, epithets, or other overtly race-related behavior. *Id.* at 713. Defendant maintains that Plaintiff's harassment claim fails for two reasons: first, because the environment that he alleges constitutes a hostile work environment was not objectively offensive or so severe or pervasive that it altered the conditions of his employment; and second, because the majority of Plaintiff's evidence does not reflect that the alleged harassment was motivated by his race or national origin.

As Defendant points out, many of the comments and actions about which Hernandez complains do not appear to be related to his race or national origin. For example, Hernandez complains that his supervisor, Thompson, would not give Hernandez permission to leave work to go to the hospital when Hernandez cut himself on the job. However, there is nothing about that incident that relates to Hernandez's national origin. Even more problematic for Hernandez, he admitted in his deposition that the person who denied Hernandez's request to go to the hospital was not Thompson—his supervisor—but rather another office worker, Jim Manischewitz. Additionally, Hernandez himself did not go to the hospital after work. Rather, he waited until two months later before going to the hospital. Thus, this incident does not support an inference that he was subjected to a hostile work environment on account of his race or national origin.

The two remaining, specific incidents that Hernandez highlighted in his deposition—one in October of 2006 and one in November 2006—involve rude language, but at the end of the day, do not present a jury question on the existence of a hostile work environment. First, Hernandez maintains that on November 20, 2006, Thompson criticized the cleanliness of his

9

work station and called him names such as "pig pen" or "pig," "dirty," "stupid," "a junkyard mechanic," and a "Pollack" during an exchange with Plaintiff. Hernandez also claims that Thompson also referred to him as Puerto-Rican during this exchange. Comments such as "pig pen" or "pig," "dirty," "stupid," and "a junkyard mechanic," while offensive and rude, do not indicate that the alleged harassment was motivated by Hernandez's race or national origin. See *Luckie*, 389 F.3d at 713-14 (summary judgment appropriate when none of the incidents were sufficiently connected to race); *Patton*, 276 F.3d at 339 (no evidence that supervisor's "abusive" and "rude" treatment of plaintiff was motivated by her race or gender). Thus, viewing these allegations in the light most favorable to Hernandez, the majority of these statements do not appear to implicate Hernandez's national origin, but rather relate to the cleanliness of his work station. Criticism of one's hygiene, or the cleanliness of one's surroundings, can be demeaning, but typically does not rise to the level of harassment. Workplace harassment must be connected to a plaintiff's race or national origin before it reasonably may be construed as being motivated by the defendant's hostility to the plaintiff's race or national origin. *Beamon v. Marshal & Isley Trust Co.,* 411 F. 3d 854, 863-864 (7th Cir. 2005). These allegations do not rise to the level of being sufficiently connected to Hernandez's national origin to be evidence of race-based animus.

The remaining two references from the November 20 exchange—that Plaintiff was Puerto Rican and looks like a "Pollack"—are related to a person's national origin. But Thompson's alleged comment that Hernandez looks like a Pollack it is not evidence of national origin discrimination toward someone of Puerto Rican national origin. And simply calling someone of Puerto Rican descent a "Puerto Rican" is not a racial epithet. Compare *Cerros v Steel Technologies, Inc.,* 288 F.3d 1040, 1042 (7th Cir. 2002) (where the Seventh Circuit found the names "brown boy," "spic," "wetback," "Julio," and "Javier," to be "racialized derogatory

10

names"). But even assuming that the comments were meant (or said) in a derogatory manner and thus could be said to reflect national origin animus, these comments occurred during a single conversation, on one day. Evidence of a supervisor's occasional or sporadic use of a slur directed at an employees' race, ethnicity, or national origin generally is not enough to support a claim under Title VII. See, *e.g., Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372, 1380 (7th Cir. 1986); see also *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (work environment was not objectively hostile within the meaning of Title VII, even when racial and derogatory slurs had been overheard by African-American employees on a number of occasions). As the court in *Patton* explained, "Title VII 'does not guarantee a utopian workplace, or even a pleasant one.'" *Id.* (quoting *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994); see also *Spearman*, 231 F.3d at 1086 (Title VII is not a "general civility code" for the workplace) (internal citations omitted). Here, even assuming that the words carried with them a discriminatory animus, the frequency of the harassment simply fails to rise to the level of "pervasive."

In further support of his argument that the harassment was severe and pervasive, Hernandez maintains that on October 24, 2006, when he and another employee were speaking Spanish on break, Thompson told Hernandez that he should not speak Spanish on the job. See, *e.g., Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1265-67 (7th Cir. 1993) (finding that the statement "learn to speak English" could be circumstantial proof of discriminatory animus, but noting that "remarks at work that are based on stereotypes of an individual's national origin do not invariably prove that national origin played a part in an employment decision"). Even assuming this incident demonstrates some animus on the part of Thompson, the two incidents in the Fall of 2006 together do not rise to the level needed to establish a hostile work environment.

11

As mentioned above, in order to sustain a hostile work environment claim, the events complained of must be objectively offensive and so severe or pervasive as to alter the conditions of employment. *Luckie*, 389 F.3d at 714; *Patton v. Indianopolis Public Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (plaintiff's allegations of being treated in a rude, abrupt and arrogant manner by supervisors and coworkers were not sufficiently sever or pervasive). In making a hostile work environment determination, a court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Cerros*, 288 F. 3d at 1046. In terms of frequency, the complaint and Plaintiff's deposition testimony identifies two dates during the course of Hernandez's four and a half year employment on which Hernandez alleges that he was subjected to harassing comments by Thompson.[7] The additional complaints of being watched more closely by his supervisor and not being allowed certain privileges at work, considered in conjunction with the specific instances in October and November 2006, fail to rise to the level of discriminatory conduct that has been found to constitute a hostile work environment. The infrequency of the alleged discriminatory conduct strongly undercuts Hernandez's claim of a hostile work environment. Moreover, although Hernandez has identified comments that he deemed offensive utterances, Hernandez has not identified any conduct that was physically threatening or that objectively constitute racial epithets targeting his race or ethnicity. The

---

[7] In his response brief, Hernandez also claims that he was harassed by co-workers other than Thompson. This assertion is contradicted by Hernandez's sworn deposition testimony, in which he testified that the only District employee who discriminated against him was his supervisor, Thompson. Hernandez also admitted in his response to Defendant's statement of facts that Thompson was the only employee that discriminated against him. Thus, the evidence fails to demonstrate that Hernandez's co-workers contributed to a hostile work environment.

specific incidents described by him in his complaint and his deposition occurred over the course one month's time, while his employment has lasted approximately 5 years.

In support of his harassment claim, Hernandez relies heavily on the case of *Jean-Baptiste v. K-Z, Inc.*, 442 F. Supp.2d 652 (N.D. Ind. 2006). The plaintiff in the *Jean-Baptiste* case was a black Haitian who was hired by the defendant as a permanent employee in its lamination department and then terminated 21 days after he was hired. *Id.* at 656. From the first day of his employment, co-workers subjected the plaintiff to such conduct as passing wind in his face, ordering him to "go home black man," telling him "we don't want you around here because you're black," repeatedly hitting him, dropping work materials on him, and putting a finger in plaintiff's face while telling the plaintiff, "Black people so stupid, you can't do your job." *Id.* at 656. The plaintiff's supervisor witnessed some of these incidents, but failed to take any action. Whenever the plaintiff tried to complain to his supervisor, the supervisor ignored him. *Id.* at 656. The defendant argued that it terminated the plaintiff's employment due to his poor performance. *Id.* at 658. However, on the day of his termination, the supervisor told the plaintiff that he was a good employee but the company needed to make room for another employee who would be returning from a disability leave. *Id.*

Hernandez compares his situation to the incidents experienced by the plaintiff in *Jean-Baptiste*, but there simply is no comparison in light of the case law. In *Jean Baptiste*, the plaintiff testified that his harassers "made derogatory remarks to him on each working day" of his employment. *Id.* at 672. In contrast, Hernandez, who has worked for the District for four and a half years, testified that all of the comments by Thompson that he deemed to be related to his national origin were made on one day and during one conversation. In fact, Hernandez testified, and his EEOC charge reflects, that after he made a complaint against Thompson in

November 2006, "the national origin discrimination ended." See Hernandez Dep. at 25:8-20 and Complaint Ex. 1. Hernandez also testified that after November 21, 2006, Hernandez received all of his work assignments from the garage foreman. Furthermore, the plaintiff in *Jean-Baptiste* testified that he felt physically threatened after having been hit several times, having work material dropped on him and having a co-worker put his finger in his face and tell the plaintiff that "Black people so stupid, you can't do your job." *Id.* at 656. There also was evidence in the *Jean-Baptiste* case that employees told, and the supervisors tolerated, jokes based on race and national origin such "black jokes" and "Mexican jokes." *Id.* at 657. Here, there is no evidence of that Hernandez was physically threatened, or even felt physically threatened, by Thompson or his co-workers in the garage. Hernandez Dep. at 25:21-26:13.

In sum, because the incidents described by Plaintiff were sporadic, isolated, and, at worst, rude and offensive, the Court cannot determine that Hernandez's work environment rose to the level of a hostile work environment. See *Wyninger,* 361 F.3d at 977; see *Patton,* 276 F.3d at 339 (rejecting hostile work environment claim even though plaintiff's supervisors treated her rudely, ignored her suggestions, failed to communicate changes at work, and severely criticized her without good reason because "a reasonable jury could not have determined this treatment to be so severe or pervasive as to alter the plaintiff's conditions of employment in a significant way."). Summary judgment is appropriate on Plaintiff's hostile work environment claim.

**B.     Retaliation claim**

In Count II of his complaint, Hernandez alleges that after he complained about Thompson's discriminatory treatment in November 2006, Thompson retaliated against him by stating that he wanted Hernandez fired. In his response brief, Hernandez adds that Thompson retaliated against him by issuing unwarranted disciplinary write-ups.

Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Brown*, 499 F.3d at 684 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 662 (7th Cir. 2006) (quotations and citations omitted). "Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted). Alternatively, under the indirect approach, in order to establish a *prima facie* case for retaliation, the employee must show that (1) after filing a charge, the employee was subject to adverse employment action; (2) at the time, the employee was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action. See *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir. 2004). "'If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.'" *Tomanovich,* 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998)). Then, if the employer presents evidence of a non-discriminatory reason for its employment action, "'the burden shifts back to the plaintiff to demonstrate that the employer's reason is pre-textual.'" *Id.* (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005)).

Whether Hernandez chooses the direct or indirect method, he must establish that he suffered a materially adverse employment action. Adverse employment actions must be

"materially adverse" – a concept meaning more than a mere inconvenience or an alteration of job responsibilities. *Ribando v. United Airlines, Inc.,* 200 F. 3d 507, 510 (7th Cir. 1999). Actionable retaliation involves employer conduct that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 648 (7th Cir. 2005). Examples of adverse employment actions include termination, demotion, decrease in compensation, material loss of benefits, or significantly diminished material responsibilities. *Ribando,* 200 F. 3d at 511.

Hernandez primarily argues that Thompson retaliated against him by issuing unwarranted disciplinary write-ups. Unjustified disciplinary write-ups do not rise to the level of an adverse employment action in the absence of evidence that these write-ups led to some identifiable job action against Hernandez. The Seventh Circuit consistently has held that negative evaluations, without more, do not constitute adverse employment actions. In *Whittaker,* the Court held, "[w]hile [plaintiff's] negative evaluation, written warnings, and placement on 'proof status' are putatively disciplinary measures, none resulted in tangible job consequences and therefore are not adverse employment actions actionable under Title VII." *Whittaker*, 424 F. 3d at 648. Similarly, in *Beamon v. Marshal & Isley Trust Co.,* the plaintiff claimed that he was discriminated against and retaliated against when he received "false" performance reviews. 411 F. 3d at 861-862. With respect to the plaintiff's claim that he received false performance reviews, the Seventh Circuit ruled that negative performance evaluations are not "considered to be actionable adverse employment actions." *Id.* at 862.

Here, Hernandez cannot establish that he suffered an adverse employment action on the basis of disciplinary write-ups that he believed were unwarranted. In support of his claim, Hernandez submitted six disciplinary action forms ranging from January 2007 to July 2008, three

of which were signed by Thomas Thompson. Yet none of the write-ups led to any tangible job consequences. Hernandez remains employed by the District as a maintenance mechanic and continues to work at the Central Garage maintaining the District's fleet of trucks. He admits that his salary has never been decreased, he has not lost any pay, and he has never lost any benefits as a result of the disciplinary write-ups that he has received.

The remaining incidents that Hernandez identifies also do not constitute adverse employment actions. Hernandez argues that: (1) he was required to look up the parts that he needed to repair vehicles and had to request that the parts be ordered for him, as opposed to being able to order the parts himself; (2) he was not allowed to enter the main office; and (3) his work station was moved to the mechanic's bay located directly in front of the main office. The Seventh Circuit has held on many occasions that mere unhappiness and inconvenience do not constitute adverse employment actions and are not actionable under Title VII. *Haywood v. Lucent Technologies, Inc.,* 323 F. 3d 524, 532 (7th Cir. 2003). In the same vein, the Supreme Court stated that it is important to separate the "significant from trivial harms" in retaliation cases. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). Title VII's anti-retaliation provision does not protect an individual from all retaliation, but only "from retaliation that produces an injury or harm." *Id.* at 67. "[N]ormally petty slights, minor annoyances, and simple lack of good manners" will not dissuade "a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. The items above that Hernandez complains about are, at most, trivial harms that would not dissuade a reasonable worker from making or supporting a charge of discrimination. Indeed, the write-ups and incidents highlighted by Hernandez have not stopped him from filing grievances: the record reflects that Hernandez

17

has submitted almost twice as many grievance forms than the number of write-ups that he has received.

Finally, in addition to the fact that Hernandez cannot establish that he suffered an adverse employment action, Hernandez failed to identify a similarly situated employee outside the protected class who was treated more favorably than he was, which is required to prove his claims using the indirect method. Instead of identifying a similarly situated employee, Hernandez argues that a question of fact exists regarding "if"—that is to say, whether—other employees were subject to the same standards as Hernandez. Pl.'s Resp. at 10. At the summary judgment stage, it is Hernandez's responsibility to offer evidence to support his causes of action. Hernandez cannot avoid summary judgment by suggesting that a question of fact may exist and positing that evidence may support his claims. Rather, as the non-moving party, Hernandez must present "evidence upon which the jury could find for [him]." *Anderson v. Libby Lobby, Inc.*, 477 U.S. 242, 251 (1986); see *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997) ("[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion.")

One final point: the record reflects that Thompson told at least one person that he wanted to fire Hernandez after Hernandez filed a grievance against him in November 2006. However, the record is clear that Thompson failed to carry out this threat. "An unfulfilled threat, which results in no material harm, is not materially adverse." *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531 (7th Cir. 2003) (finding unfulfilled threat of demotion was not an adverse action in discrimination case). If Thompson had carried through on his threat, this likely would have been a different case.

**IV.    Conclusion**

For the reasons stated above, the Court denies the District's three motions to strike [82, 84, 86] and grants the District's second motion for summary judgment [71]. Judgment is entered in favor of Defendant District and against Plaintiff Hernandez.

Dated:  September 21, 2011

　　　　　　　　　　　　　　　　　　　　　Robert M. Dow, Jr.
United States District Judge